AFRO-AMERICAN INDUSTRIAL & BENEFIT ASSOCIATION OF THE UNITED STATES OF AMERICA, A CORPORATION, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. Under the provisions of sections 1 and 5 of Article IX of the State Constitution, only two classes of taxes can be levied in this State, an *ad valorem* tax and a tax on licenses.

2. Chapter 5459 of the Laws of 1905, defining and regulating "Sick and Funeral Benefit Insurance," is not repealed by Chapter 5597 of the Acts of 1907, and the two chapters must be construed together. The taxes provided for in each chapter were intended as license taxes and are properly so held. The provisions of each chapter must be complied with, and a compliance with the requirements of chapter 5459 and the payment of all the license taxes imposed by section 7 thereof do not constitute a defense to an action at law brought by the State to recover two per cent of the gross amount of receipts of premiums from policyholders in this State, imposed by subdivision B of chapter 5597 upon companies or associations doing business under chapter 5459.

3. There is no express limitation upon the power of the legislature for levying a tax on licenses; but such power should not be so exercised as to deprive any person of property without due process of law, or so as to deny to any person the equal protection of the laws.

This case was decided by Division A.

Writ of error to the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*Raney & Oven, J. W. Archibald* and *D. H. Doigg,* for Plaintiff in Error;

*Park Trammell,* Attorney General, for the State.

SHACKLEFORD, J.—The State of Florida brought an action against the plaintiff in error by which it was sought to recover the sum of $1,024.78, which was alleged to have become due and payable to the State, on the first day of January, 1909, as "a privilege or license tax of two per cent of the gross amount of receipts received from its policyholders in this State, for the year 1908." To the declaration the defendant filed six pleas, the first and fourth of which were respectively "that it never was indebted as alleged," and "that the plaintiff ought not to have its action aforesaid against it because it has fully paid all legal obligations due by it to the State of Florida under and by the terms of the laws of the State of Florida under which it is transacting its business." A demurrer was interposed and sustained to the other pleas, as was also true of the seventh, eighth and ninth pleas, which were filed by leave of the court. Errors are assigned upon the sustaining of the respective demurrers to these several pleas, but we deem it unnecessary to set forth either the pleas or the grounds of the demurrers. The plaintiff joined issue upon the first and fourth pleas, which we have copied above, and the cause was submitted to the court for trial and disposition upon the following agreed statement of facts:

"The following facts are agreed upon and submitted to the court for its decision in the trial of the above cause, which it is hereby agreed will be submitted upon the statement of facts hereunder to the court without a jury.

That the defendant is a corporation organized and doing business under the laws of Florida.

That the defendant was during the year 1908, and has since been doing a sick and funeral benefit insurance business under the provisions, and within the meaning of chapter 5459, Acts of 1905, and that the said company has done no other class or kind of business.

That the gross premium receipts of said defendant company during the year 1908, from policy holders in the State of Florida, amounting to $51,239.45, which amount of premiums was received from policies issued under the provisions of chapter 5459 aforesaid defining sick and funeral benefit insurance and which policies insured the holders thereof against sickness, and provided for funeral benefits and provided for no other or further indemnity to the holders thereof.

That the said defendant has not paid to the State of Florida two per cent. of the gross amount of receipts from its policy holders in the State of Florida during the year 1908, which premium receipts amounted to $51,239.45.

That the said defendant on the first day of October, 1907, and again on the first day of October, 1908, paid to the State Treasurer of the State of Florida the tax of $100.00 provided for in section 7 of chapter 5459, and a tax of $2.00 upon each of its local agents, and a tax on each of its traveling agents of $10.00, as provided and required in said section of said chapter of said Acts, and has paid the fee of $5.00 for each annual statement filed, to-wit: January 1st, 1908, January 1, 1909, and January 1st, 1910.

That no valuation appraisement or assessment of the

gross premium receipts of the defendant company has been made by the State of Florida, or any of its officers, or agents, or any assessor of taxes in this or any other county of this State, except in so far as the provisions of schedule 'B' of section 8 of chapter 5597, and the provisions of chapter 5459, of the laws of the State of Florida, may of their own operation impose a license or privilege tax upon the said defendant company or corporation, and no levy of a property tax on such gross premium receipts has been made by the State of Florida. That prior to the institution of this suit W. V. Knott, State Treasurer of the State of Florida, in his official capacity, demanded of the defendant the payment of two per cent of the said gross premium receipts, which said demand was refused by the defendant, and that with the exception of the said demand made by the State Treasurer of the State of Florida, there has been no other demand made upon the defendant."

No other evidence was adduced, and the court found in favor of the plaintiff and rendered final judgment against the defendant for the sum of $1024.78, damages, together with costs. The defendant has brought this judgment here for review and has assigned twelve errors, but it is unnecessary to discuss them in detail. In fact, the attorneys for the defendant have not so treated them, but have the following statement in their brief in which we fully concur:

"It appears to us that the whole case hinges upon two questions—the right of the State Legislature to levy the tax as it has attempted to levy it, and if it has such right, what construction shall be placed upon chapter 5459, Acts of 1905, and sub-division B, chapter 5597, Acts of 1907, when construed together for the purpose of ascertaining what tax the company is legally due the State thereunder."

The defendant contends that, under the provisions of sections 1 and 5 of Article 9 of the State constitution, only two classes of taxes can be levied in this State, an *ad valorem* tax and a tax on licenses. The correctness of this contention may be conceded. We might concede the correctness of the further contention of the defendant that "In laying an *ad valorem* tax, a valuation of the property of each person or corporation liable to be taxed is an absolute necessity. In no other way can the amount to be paid by each taxpayer be ascertained. A valid assessment is, therefore, indispensable." See 27 Amer. & Eng. Ency. of Law (2nd ed.) 660, cited by the defendant. But, conceding this, we fail to see its applicability to the instant case, since the tax in question is not an *ad valorem* tax. In so holding we again find ourselves in full accord with the defendant, but the next contention is that neither is such tax a tax on licenses, therefore, it follows that it is unauthorized by the constitution and must be held invalid. Is this contention correct? This question we are called upon to answer. Section 7 of chapter 5459, Acts of 1905, with the requirements of which it is agreed that the defendant has fully complied and upon which it relies, is as follows:

"Sec. 7. Each company, corporation or association doing business under the provisions of this act shall pay annually to the State Treasurer, for the privilege of transacting business in this State, one hundred dollars ($100.00) as a license tax, and two dollars for each local agent, and ten dollars for each traveling agent, and a fee of five dollars for each annual statement filed; provided, that life insurance companies receiving a certificate of authority in accordance with the provisions of section two of this act which shall have paid the license tax required of such company for conducting life insurance in this State, shall not be required to pay the license tax herein provided for."

It may be advisable to state that this chapter, as is

shown by its title, was intended to define and regulate "sick and funeral benefit insurance." Chapter 5597, acts of 1907, is entitled "An act imposing licenses and other taxes, providing for the payment thereof, and prescribing penalties for doing business without a license, or other failure to comply with the provisions thereof." That portion of sub-division B thereof which relates to the instant case is found on pages 49 and 50, and is as follows:

"That each insurance company, or association, firm or individual doing business in this State, including corporations or associations engaged in the business of insuring against fire, indemnity, accidents to persons, acting as surety upon bonds, guaranteeing the fidelity of employees, and insuring employers against liability for accident to employees, and life insurance companies shall pay to the State Treasurer a license tax of two hundred dollars; plate glass insurance companies shall pay to the State Treasurer a license tax of fifty dollars; and in addition thereto each of said companies shall, upon the 1st day of January after the passage of this act, and on the first day of each succeeding January thereafter pay to the State Treasurer two per cent of the gross amount of receipts of premiums from policyholders in this State.

Companies or associations doing business under chapter 5459, Laws of Florida, Acts of 1905, shall pay to the State Treasurer two per cent of the gross amount of receipts from policyholders in this State.

Each insurance company, or association, mentioned in this act, doing business in this State, shall, upon the 1st day of October, after the passage of this act, and upon the first day of each succeeding October, furnish to the State Treasurer the name and address of each agent or solicitor authorized to write insurance in this State; for each local agent or solicitor, each insurance company shall pay to the State Treasurer a license tax of five dollars, and it

shall be the duty of the State Treasurer to transmit to the county tax collector the name and address of every such agent as resides respectively in such county. Counties, cities and towns may require a license tax of any such agent not to exceed fifty per cent of the state tax.

That each insurance company shall pay to the State Treasurer for each traveling agent or solicitor doing business in this State a license tax of twenty-five dollars for each such agent.  Counties, cities and towns may require from any such traveling agent or solicitor a license tax of five dollars for each county, city or town he does business in.

For each insurance adjuster, whether resident or non-resident, who has not paid a license as agent or traveling agent, who adjusts insurance losses in this State, each insurance company shall pay a license tax of ten dollars.

For each insurance rate-maker or rate agent, traveling in this State, who makes, fixes or recommends the fixing or adjusting of rates in this State, each insurance company represented by him, or whose rates are affected by his services, whether such company is operating alone or as a member of any association or combination of companies, shall pay a license tax of twenty-five dollars."

It will be observed that the Legislature intended the tax in question as a license tax, and so treated it.  It will further be observed that in the paragraph so copies above a license tax of two hundred dollars is imposed upon certain specified insurance companies, &c., and a license tax of fifty dollars upon plate glass insurance companies, and that "in addition thereto each of said companies shall" pay annually "two per cent of the gross amount of receipts from policy holders in this State," which like amount is required of companies doing business under chapter 5459, Acts of 1905, to which class the defendant belongs.  Such Chapter 5597 does not require companies

92 SUPREME COURT OF FLORIDA.

Afro-American Ind. & Benefit Ass'n v. State—Opinion of Court.

doing business under such Chapter 5459 to pay also a
license tax of a specified sum per annum, as it does require
of the other insurance companies specified therein, but
such Chapter 5597 does not undertake to repeal Chapter
5459. It will be also observed that chapter 5459 requires
each insurance company, &c., to also pay certain specified
license taxes for each local agent or solicitor, each travel-
ing agent or solicitor, and for each adjuster, &c. These pro-
visions are of a similar nature to those in section 7 of
chapter 5459. We are of the opinion that these two chap-
ters must be construed together and we fail to see wherein
a compliance by the defendant with the provisions of sec-
tion 7 of chapter 5459 constitutes any defense to the ac-
tion brought against it to recover the two per cent of the
gross amount of receipts from the policy holders in this
State, imposed by chapter 5597. The contention of the
defendant that such holding would result in unjust dis-
crimination, in that a license tax of only $50.00, in addi-
tion to two per cent upon gross receipts, is thereby im-
posed upon Plate Glass Insurance Companies, whereas
Sick and Funeral Benefit Insurance Companies are re-
quired to pay a license tax of $100.00, is without merit.
We fully approve of what we said in Seaboard Air Line
Ry. Co. v. Simon, 56 Fla., 545, 47 South. Rep., 1001, in
regard to classifications adopted for legislative regulation,
but that case fails to support the contention of the defend-
ant. See also State v. A. C. L. R. Co., 60 Fla., 465, 54 South.
Rep. 395. As we held in Hardee v. Brown, 56 Fla., 377, 47
South. Rep., 834, "There is no express limitation upon the
power of the legislature for levying a tax on licenses; but
such power should not be so exercised as to deprive any
person of property without due process of law, or so as
to deny to any person the equal protection of the laws."
In our opinion, the principles enunciated in these last two
cited cases are decisive upon the points presented in the

instant case. Johnson v. Armour & Co., 31 Fla., 413, 12 South. Rep., 842, will also be found instructive. Further discussion does not seem to be called for, nor do we see any useful purpose to be accomplished by discussing the authorities from other jurisdictions which have been cited to us by the respective counsel. What we have said sufficiently disposes of the case. Having found no reversible error, it follows that the judgment must be affirmed.

WHITFIELD, C. J., and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.